IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL HUIZAR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 17-CV-06381 |
| | ) | |
| MICHAEL P. MELVIN, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is petitioner Daniel Huizar's petition for a writ of habeas corpus under 22 U.S.C. § 2254. Huizar is currently serving a 45-year sentence at Lawrence Correctional Center for the first-degree murder of Alfredo Lopez. Huizar's petition states two grounds for relief: insufficient evidence and judicial estoppel. For the reasons detailed below, Huizar's petition is denied because he has not raised cognizable violations of federal law.

## BACKGROUND

After a bench trial, Huizar appealed his conviction to the Illinois Appellate Court, which affirmed the trial court's judgment. The Illinois Supreme Court subsequently denied leave to appeal. Huizar then filed a post-conviction petition for relief in state court that the trial court summarily dismissed. The appellate court once again affirmed that dismissal, and the Illinois Supreme Court again denied leave to appeal. Huizar then filed his timely habeas petition in this Court.

The facts set forth are drawn from the Illinois Appellate Court's opinion on direct appeal. *See People v. Huizar*, 2014 IL App (3d) 120572-U. The findings of the trial court are presumed correct on federal habeas review absent a petitioner's presentation of clear and convincing evidence to rebut them. *See* 28 U.S.C. § 2254(e)(1). Huizar makes no such showing and, in any

event, those facts are largely undisputed. On April 16, 2008, Huizar was working at a Subway restaurant in Joliet, Illinois. At around six or seven o'clock, two of his cousins, Reyes Velasquez and Miguel Garcia, were sitting in Huizar's car outside of the restaurant, waiting for him to finish his shift. Both of the cousins were reputedly members of the Latin King street gang. While they were sitting in the car, a group of five men, some or all of whom were allegedly members of the rival Vice Lord street gang, approached the car and challenged Velasquez and Garcia to get out and fight. The group of five consisted of Jose Aguirre, Sergio Garcia, Juan Ornelas, Eric Perez, and Fabian Vargas, and they had come to Subway expressly because they had heard that Latin Kings worked there. When Velasquez and Garcia refused to exit the vehicle, the group began damaging the car by kicking it with steel-toed boots and throwing a rock at one of the windows, breaking it. The Vice Lords then turned and began walking toward Subway when Huizar's cousins began exiting the vehicle. At that point, one of the Vice Lords grabbed a chair that had been propping open the door to Subway and threw it at the car. The two cousins quickly retreated and got back into the car. By all accounts, at this point, the group began walking or running away from the restaurant in the direction of a nearby Walgreen's, which was about three stores down from the Subway and across an alleyway. As the Vice Lords began to leave, Velasquez and Garcia got out of the car and began to head toward the Subway and their cousin.

  As this scene was unfolding outside the restaurant, Huizar and two of his coworkers, Julio Perez and Pedro Sanchez, became aware of the commotion. Shortly after the Vice Lords threw the chair at the car, Huizar emerged from the restaurant with a gun that he had recently purchased for protection. Huizar's trial turned on the fact dispute that resulted from the subsequent few seconds. Huizar and Sanchez testified at trial that when Huizar exited the restaurant, one of the Vice Lords, wearing a white hoodie, was pointing a gun at them. The Vice Lords, on the other hand, testified

2

that none of them had a gun. Similarly, Roger Mercer, a third-party witness with no affiliation to any of the other involved individuals, described seeing Huizar with a gun but did not testify that any of the Vice Lords were armed. Garcia, Huizar's cousin, testified that he did not remember seeing Huizar or the Vice Lords with a weapon. Finally, Joliet Police Detective Moises Avila testified that while Sanchez said at trial that one of the Vice Lords had a gun, he never mentioned that piece of information during his interview with police after the shooting.

Regardless, all parties agree that Huizar, shortly after leaving the Subway, turned and fired his weapon several times in the direction of the Vice Lords. The shots all missed their targets, but tragically, one of the bullets struck and killed Alfredo Lopez, an innocent bystander walking into the Walgreens with his two sons. After firing the shots, Huizar turned and ran before being apprehended by police shortly thereafter. The Vice Lords were also arrested and later pleaded guilty to intimidation. They each agreed to testify in the case against Huizar and were each sentenced to ten years imprisonment.

Video footage from a security camera at the Subway corroborated much of the witness testimony. The trial judge described the video as the most compelling evidence presented. State Ct. R., Ex. B, 15. She recounted how the footage shows the entrance of the restaurant and depicts the Vice Lords throwing the chair at the car, running toward the Subway, and then leaving. By the trial judge's calculation, Huizar and Sanchez then leave the sandwich shop about nineteen seconds later. *Id.* at 17. The State argued that Huizar appears then to offer the gun to his cousins, who have also made their way to the entrance, but they decline to take it. Huizar then turns and faces the direction of the off-frame Vice Lords and fires within one second. *Id.* at 20. Of note, Huizar, Sanchez, Velasquez, and Garcia do not duck, appear afraid, or behave in any way that might be expected of people who look up and see a gun being pointed at them. *Id.* at 17.

3

At trial, Huizar did not contest that he fired the bullet that killed Mr. Lopez. Instead, he claimed self-defense and defense of others, based primarily on his claim that one of the Vice Lords was pointing a gun at him and his cousins before he fired back. In the alternative, he argued for a reduction of the conviction from first-degree murder to second-degree murder based on his true but objectively unreasonable belief that he had to fire his weapon to protect himself and his cousins. The trial judge rejected both arguments, citing the video and Mercer's testimony as the crucial factors in her finding that Huizar was the only individual on the scene with a gun and that he did not shoot because of a belief that one of the Vice Lords was pointing a gun at him and his cousins. Consequently, the trial judge convicted Huizar of first-degree murder.

In his habeas petition, Huizar asserts two grounds for relief. He bases the first ground on the premise that his conviction was based upon evidence that is insufficient to persuade a reasonable factfinder of his guilt. To support this claim, Huizar contends that he sufficiently proved a theory of imperfect self-defense by showing that he believed there to be an imminent threat, even though that belief was unreasonable. In the second ground for relief, Huizar claims that judicial estoppel should have precluded the state from arguing that a lack of imminent harm negated his self-defense claim. According to the petitioner, the State made contradictory arguments first at the grand jury proceedings in the Vice Lords' case, and then during his own trial. Huizar believes that when the State, at the grand jury proceedings, described the shooting as occurring "during" the mob action with which the Vice Lords were to be charged, it forfeited the right to later argue at his trial that the Vice Lords no longer presented a threat at the time of the shooting. In response, the government argues that the petition should be dismissed because its claims are procedurally defaulted or not cognizable in federal habeas proceedings.

**DISCUSSION**

I.  **Standard of Review**

Per 28 U.S.C. § 2254(d)(1)-(2), a federal court may only grant a writ of habeas corpus to a petitioner incarcerated as a result of a state court sentence if the judgment was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). The statute also provides that, in order for courts to grant relief to a state habeas petitioner, the individual must first "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Supreme Court has elaborated that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

II. **Ground I: Sufficiency of the Evidence**

Huizar's first claim is that the trial judge wrongfully denied his imperfect self-defense claim. The government argues that this claim is barred because Huizar did not raise the issue of the sufficiency of the evidence in his state court appeals—and thus he has not satisfied the exhaustion requirement. Huizar counters that the government's argument is a semantic one, as this claim, despite the framing in the petition as an issue of the sufficiency of the evidence, is more accurately described as a reasonable doubt challenge based on the trial court's decision not to downgrade his conviction to second-degree murder. The Court agrees that Huizar's first claim can and should be construed as a reasonable doubt claim.[1] The claim, therefore, does not fail due to

---

[1] The Court's previous ruling on Huizar's motion for leave to file an amended petition is consistent with this view. In that motion, Huizar sought to add a third claim, substantively identical to the first claim, but which framed the issue as one of reasonable doubt. ECF No. 17. The Court

5

the exhaustion requirement because Huizar raised the issue in his direct appeal. State Ct. R., Ex. A, 28. It does fail, however, for raising an issue that is not cognizable in federal habeas corpus law.

Illinois law defines first-degree murder as occurring when an individual, with the requisite mens rea, performs an act that causes the unlawful death of another. 720 ILCS 5/7-1. Once the State substantiates a charge of first-degree murder, the defense may present mitigation evidence in order to have the conviction reduced to second-degree murder. 720 ILCS 5/9–2(a)(2). To succeed on such a claim, defendants must prove by the preponderance of the evidence that they mistakenly believed they had been acting in self-defense.

In federal habeas proceedings involving state petitioners, the due process protections of the Fourteenth Amendment ensure that all convictions are based upon adequate proof, "defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of ***every element of the offense***." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (emphasis added). Here, Huizar is not challenging any of the elements of first-degree murder. He admits that he intentionally fired his gun at the Vice Lords and that one of his shots killed Mr. Lopez. Instead, Huizar argues that the trial court erroneously refused to downgrade his conviction to second-degree murder. In other words, Huizar poses his argument in the context of a mitigating factor under state law. This is a type of state law claim that is not cognizable in federal habeas proceedings.[2]

---

denied the motion because it agreed with Huizar's contention that the two claims were one and the same, rendering moot the need to amend.

[2] Although Huizar dedicates most of his reasonable doubt analysis to the issue of imperfect self-defense, he also sporadically lumps in the broader concern of the reasonableness of his conviction, regardless of whether for first-degree or second-degree murder, in light of his self-defense and defense of others claims. The calculus is the same across all three claims: self-defense, defense of others, and imperfect self-defense. All three claims are affirmative defenses or mitigating factors that do not negate elements of homicide under Illinois law, and thus all are non-cognizable in federal habeas corpus. In addition, the Court's finding that the trial judge reasonably

As Judge Kennelly explained in rejecting the same argument in *Davis v. Lemke*, 2014 WL 562454 (N.D. Ill. Feb. 13, 2014),

> An inquiry into whether a prior ruling is correct under state law "is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (per curiam) (citing 28 U.S.C. § 2254(a)). The Seventh Circuit recognized this principle in *Thompson v. Battaglia*, 458 F.3d 614 (7th Cir. 2006), where a habeas petitioner challenged the application of Illinois's second-degree murder statute. The court sidestepped the merits of the argument, citing *Estelle*. "Thompson does not argue that [the Illinois Supreme Court]'s interpretation of the second-degree murder statute violates any federal law; we therefore lack authority under 28 U.S.C. § 2254 to grant his petition on this basis." *Id*. at 618 (citing *Estelle*, 502 U.S. at 67–68).

*Id*. at *10.

*Davis* presented an almost identical situation. There, the petitioner asserted both that the evidence was insufficient to support his first-degree murder conviction and that the trial judge erred in rejecting his second-degree murder claim. Citing the principle, Judge Kennelly observed that "[t]o the extent [petitioner] is arguing something other than sufficiency, [t]he argument is based entirely on state law. . . . This is not a question that involves the Constitution or laws or treaties of the United States. Instead, it requires an interpretation of the Illinois second-degree murder statute and case law, and an inquiry into the mitigating factors they require. This argument is not a cognizable ground for issuance of a writ of habeas corpus." *Id.* at *10. *See also*, *e.g.*, *United States ex rel*. *Johnson v. Gaetz*, No. 10 C 1525, 2010 WL 2044930, at *4 (N.D. Ill. May 24, 2010) (rejecting habeas claim seeking reduction of first-degree murder conviction to second-degree

---

rejected Huizar's imperfect self-defense claim necessitates a similar finding with respect to self-defense and defense of others, given that the latter two defenses require an additional finding of reasonableness.

murder as non-cognizable "[b]ecause due process does not require the State to 'disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused'") (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977) (St. Eve, J.); *United States ex rel. Garrett v. Acevedo*, 608 F. Supp. 2d 1005, 1017 (N.D. Ill. 2009) (concluding that a claim that the state court erred in finding that petitioner had not proved applicability of mitigating factors necessary to reduce conviction from first- to second-degree murder is non-cognizable). The same result obtains here.[3]

---

[3] Even if Huizar's claim were cognizable, it would fail on the merits. A challenge to the sufficiency of the evidence on habeas review is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): the state must present sufficient evidence, when viewed in the light most favorable to the prosecution, to enable a rational trier of fact to find the essential elements of the charged crime beyond a reasonable doubt. "Review under § 2254 involves a double dose of deference: Federal courts defer to the state courts, which in turn defer to the jury." *London v. Clements*, 600 F. App'x 462, 466 (7th Cir. 2015) (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Huizar's sufficiency challenge focuses primarily on the two pieces of evidence that the trial judge cited as the most influential in her decision. First, he avers that the Subway surveillance footage is too limited because it does not show the Vice Lords. Second, Huizar states that the court's reliance on the testimony of Roger Mercer, the third-party witness, was also unreasonable because he never testified directly as to whether the Vice Lords had a gun.

Huizar's efforts to discredit this evidence are unpersuasive. He does not challenge the trial judge's observations about the content of the video: that Huizar did not emerge from the shop for about 19 seconds after the chair was thrown; that neither Huizar nor anyone else reacted as if a gun were pointed at them; that Huizar tried to hand the gun off to his cousins; that none of the individuals reacted with fear in the moments leading up to the shooting; and that Huizar himself fired his weapon almost immediately upon turning his attention in the direction of the Vice Lords. The trial judge also was not unreasonable in her reliance on the testimony of Mercer, who assuredly would have mentioned seeing a second gun had he observed one. Mercer also is an impartial witness, unlike Sanchez and Huizar. Moreover, a reasonable trier of fact might very well doubt the veracity of Sanchez's testimony given that his previous statement to police omitted such a crucial piece of his trial testimony. In the same vein, a reasonable trier of fact might also take Huizar's testimony with a grain of salt given the obvious potential for ulterior motives.

In short, although the petitioner accurately points out some ambiguities in the evidence, the burden required of him is much more stringent than that. The evidentiary basis for the trial judge's decisions was more than adequate for purposes of analysis under habeas law.

## II.     Ground II: Judicial Estoppel

The second claim in Huizar's petition alleges that the State should have been precluded from arguing that self-defense did not apply in his case because of the lack of an imminent threat from the Vice Lords. Huizar argues that the equitable doctrine of judicial estoppel applies because of a contradictory argument put forth in the grand jury proceedings of the Vice Lords' criminal case. The respondent counters that judicial estoppel, like self-defense, is not a cognizable claim in habeas proceedings. The Court agrees. Judicial estoppel does not evoke a federal law or right relevant to habeas law because "it is not mandated by the Constitution, laws, or treaties of the United States." *United States ex rel. Oliver v. Jones*, No. 07-CV-02546, 2007 WL 2409843, at *5 (internal citations omitted). *See also, e.g,, Soojian v. Lizarraga*, No. 16-CV-00254-AWI-SAB-HC, 2018 WL 3155617, at *39 (E.D. Cal. June 25, 2018) ("a state court's failure to employ judicial estoppel or to adhere to the law of the case doctrine does not implicate federal constitutional rights"); *Greenshields v. Price*, No. LA CV 15-5348 JCG, 2016 WL 7378875, at *2 (C.D. Cal. Dec. 19, 2016) ("challenges to a state court's application of state law concerning estoppel ... does not state a cognizable claim of a violation of federal law") (internal punctuation omitted). Huizar's judicial estoppel claims are therefore non-cognizable.[4]

\*     \*     \*

For these reasons, the Court denies Huizar's petition for a writ of habeas corpus, ECF No. 1. This is a final decision terminating all proceedings in this case, which means that Huizar may only appeal if the Court grants him a certificate of appealability per 28 U.S.C. § 2253(c)(1). To receive a certificate, petitioners must show "that reasonable jurists could debate whether (or, for

---

[4] Huizar's reply does not rebut the respondent's arguments in any way with respect to judicial estoppel, and thus effectively concedes the issue.

that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). Huizar has not shown that here. The Court thus declines to issue a certificate of appealability.

Date: February 20, 2020

John J. Tharp, Jr.
United States District Judge